NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3880
_____

MARIA ANDERS; RICH ANDERS,

Appellants,

v.

PUERTO RICAN CARS, INC., d/b/a Hertz Rent A Car;
HERTZ CORPORATION, d/b/a Hertz Rent A Car;
TOYOTA MOTOR CORPORATION;
TOYOTA DE PUERTO RICO CORP.


_____


On Appeal from the District Court
of the Virgin Islands.
(D.C. Civ. No. 04-cv-00036)
District Judge: Hon. Lawrence F. Stengel
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on December 14, 2010

Before: FUENTES, SMITH, and FISHER, Circuit Judges.

(Opinion Filed:  February 2, 2011)

_____


OPINION OF THE COURT

_____

1

FUENTES, Circuit Judge:

This matter arises from injuries incurred as a result of a May 23, 2003 car accident involving Appellants Rich and Maria Anders (the "Anders") while test-driving a used two-door 2001 Toyota Echo. The Anders brought suit against Appellee Toyota Motor Corporation ("Toyota"), the manufacturer of the car, alleging numerous product design defects. They also brought suit against Appellees Puerto Rican Cars, Inc. ("Puerto Rican Cars") and Hertz Corporation ("Hertz"), the owners and operators of the rental facility offering the car for sale. They alleged negligence against Puerto Rican Cars and Hertz for failing to inspect, service, maintain and perform corrective work, and under a theory of respondeat superior for their agent's lack of care during the test drive. After a hearing, the District Court found the Anders' expert witness unreliable and excluded his testimony pursuant to Rule 702 of the Federal Rules of Evidence. The District Court then granted summary judgment in favor of each of the Appellees. We conclude that summary judgment was appropriate and will affirm.[1]

**I.**

Because we write for the parties, we discuss the facts only to the extent necessary for resolution of the issues raised on appeal. Plaintiffs Rich and Maria Anders, originally from Austria, are husband and wife. They were living in St. Thomas, Virgin Islands on May 23, 2003, when they test-drove a used two-door 2001 Toyota Echo. The Toyota Echo was being offered for sale by Puerto Rican Cars, the operator of the Hertz car rental

---

[1] The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291.

facility on St. Thomas. Puerto Rican Cars is the indirect subsidiary of Hertz International, Ltd., which in turn is a wholly-owned subsidiary of Hertz Corporation. During the test drive, Rich was driving and Maria was in the passenger seat. Everett Simmons, a mechanic from Hertz, was in the rear passenger seat and was not wearing his seatbelt.

As the test drive began, Rich noticed that the car would pull to the left slightly, but Simmons assured him it was a minor problem that could be fixed. At one point during the test drive, Rich drove up a steep hill at Blackpoint Hill and then turned the car around to return down the hill. He testified that he was driving between seven and ten miles per hour on a flat, straight portion of the road when he stepped on the brake pedal. However, he claims that instead of slowing, the car accelerated. In contrast, Simmons later told the police that Rich was going too fast, that he asked Rich to slow down, and that he believed Rich's foot became caught between the brake and the gas pedal. Rich lost control of the car, which traveled from the left lane – the proper lane in the U.S. Virgin Islands – crossed into the right lane, struck a guard rail, and veered back into the left lane before coming to a stop. All of the occupants were injured and required medical treatment.

In their most recent, Fourth Amended Complaint, the Anders allege four product design defects against Toyota. First, they argue that the brakes failed on the hill. Second, they allege that the car's airbags did not deploy. Third, they contend that the driver's seatbelt "became disengaged." And fourth, they claim that the front passenger seat jerked forward when struck from behind by the unbelted Simmons. Further, against Puerto Rican Cars and Hertz they allege negligence for (1) failing to service, maintain

3

and inspect the car, (2) failing to perform corrective work on the brakes, which they claim had been the subject of a recall by Toyota, and (3) on a theory of respondeat superior due to the actions of Simmons in failing to secure his seat belt, causing him to fly forward into Maria's passenger seat. To assist them in proving their case, the Anders hired a long time friend and car mechanic, Edwin Stapleton.

## II.

## A.

The first issue raised on appeal is whether the District Court abused its discretion in excluding the testimony of the Anders' expert witness, Edwin Stapleton. See United States v. Schiff, 602 F.3d 152, 161 (3d Cir. 2010) (trial court's decision to exclude expert witness testimony is reviewed for abuse of discretion). For the following reasons, as well as the reasons set forth in the District Court's thorough memorandum and order, we conclude that the District Court did not abuse its discretion in excluding the testimony of Stapleton.

The introduction of expert opinion testimony is governed by Federal Rule of Evidence 702, under which the admissibility of expert testimony turns on (1) the qualifications of the expert, (2) the sufficiency of the data underlying the expert's testimony, (3) the reliability of the expert's methodology and (4) the expert's application of that methodology to the facts of the case. See Fed. R. Evid. 702.

Here, the District Court found that Stapleton had no university training, had never previously testified as an expert, and had no specialized knowledge or training about air bags, seat belt, or car seat systems. Further, the District Court noted that despite his

4

extensive knowledge of brakes and brake maintenance, Stapleton did not know what the federal standard for the thickness of brake pads and rotors was for the Toyota Echo. Stapleton also explained that in determining whether a brake part needed replacement, he would just "eyeball it" rather than measuring it. Most critically for the reliability of his testimony, Stapleton examined the Toyota Echo five years after the accident, at which time the brake rotors had become covered with extensive rust. In light of his lack of credentials, specialization, and expertise, as well as the fact that five years had passed before Stapleton examined the car, the District Court did not abuse its discretion when it excluded Stapleton's expert testimony as to the four alleged product defects.

Additionally, the District Court was correct to exclude Stapleton's testimony as a lay witness, given that he performed a limited inspection of the car five years after the accident. As a result, without the aid of "scientific, technical or other specialized knowledge," any relevant testimony could not be "rationally based on [his] perception." Fed. R. Evid. 701.

**B.**

"In the Virgin Islands, the various Restatements of law provide the rules of decision in the absence of local laws to the contrary." Gass v. Virgin Islands Telephone Corp., 311 F.3d 237, 244-45 (3d Cir. 2002) (citing 1 V. I. Code Ann. § 4). Causes of action based on claims of product defect are thus analyzed under Section 402A of the Restatement (Second) of Torts. See, e.g., Lionel v. Cincinnati, Inc., 917 F.Supp. 360, 361 (D.V.I. 1996); Mingolla v. Minnesota Min. and Mfg. Co., 893 F.Supp. 499, 505-06 (D.V.I. 1995). The relevant portion of Section 402A reads:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Accordingly, under Section 402A, a plaintiff must establish that (1) there was an unreasonably dangerous design defect present at the time the car left the possession and control of the manufacturer and (2) that the defect caused his or her injuries.

While generally under Section 402A a plaintiff need not provide expert testimony to prove a manufacturing defect, Perez-Trujillo v. Volvo Car Corp. (Sweden), 137 F.3d 50, 55-56 (1st Cir. 1998) (collecting cases), in most jurisdictions, including the Virgin Islands, a plaintiff is required to supply expert testimony in order to survive summary judgment on a design defect claim, Belofsky v. General Elec. Co., 1 F.Supp.2d 504, 507-08 (D.V.I 1998), at least "when laymen would lack the necessary knowledge and experience to render a just and proper decision," Jones v. Toyota Motor Sales, USA, Inc., 282 F.Supp.2d 274, 276-77 (E.D.Pa. 2003) (requiring expert testimony to survive summary judgment on a Section 402A design defect claim, because without an expert, "a jury would be left to speculate over the . . . features of" an alternative design for the car's restraint system, "and whether such a restraint system would have lessened the injuries" that the plaintiff suffered).

Because the Anders failed to establish their various design defect claims through the testimony of an expert witness, the District Court's grant of summary judgment in favor of Toyota was appropriate.

6

## C.

The District Court also found that the lack of admissible expert testimony precluded the Anders from proving that Puerto Rican Cars and Hertz had failed to service, maintain or inspect the car, or perform corrective work on the brakes. The Court noted that the Appellees' well-credentialed expert, Mr. Weckerling, inspected the car as well as skid marks on the shoulder of the road shortly after the accident. From this Weckerling concluded that the brake and steering systems did not reveal any defects or malfunctions. Records from Toyota also indicated that there were no problems with the brake system and that the car was regularly serviced. In the absence of evidence from the Anders, the District Court was thus correct to grant summary judgment as a matter of law on these claims.

Finally, the Anders have cited to no legal authority, either within or outside the Virgin Islands, to support the existence of a duty of passengers to wear seat belts so as to avoid harming others in the event of an accident. Indeed, with the lone exception of Edwards v. McBreen, 849 A.2d 204, 208 (N.J. Super. Ct. App. Div. 2004) (declining to decide whether "a rear seat passenger ha[s] a duty to exercise reasonable care to prevent injury to a third person occupying the same vehicle by utilizing any available seatbelt"), this Court has been unable to locate any jurisdiction that has addressed, let alone answered this question. Although not determinative of whether a duty exists at common law, we also note that the Virgin Islands Legislature does not require that back seat passengers wear seat belts. 20 V.I.C. § 466(b) ("No person may operate a motor vehicle unless the operator and any passenger in the front seat of the vehicle are restrained by a

lap and shoulder restraint . . .")(emphasis added). Accordingly, in the absence of any articulation of such a duty by the legislature or courts of the Virgin Islands, we decline to create such a duty for the first time here. We thus affirm the District Court's grant of summary judgment on the Anders' claim that Simmons was negligent for failing to wear a seat belt.

## III.

For the foregoing reasons, we will affirm the District Court's order.